IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR THE SEARCH OF STORED ELECTRONIC DATA CONTAINED IN AN APPLE IPHONE CONTAINING SIM CARD WITH IDENTIFYING NUMBER 0064922901 | 4:20-mj-00017 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Peter Gonzalves, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for stored electronic data contained in an Apple iPhone Cellular Telephone containing SIM card with identifying number 0064922901 (the "Device"), taken from an apartment under the control of Kunta DANIELS pursuant to a state search warrant executed on March 10, 2020. The Device is currently in the custody of the Danville, Virginia Police Department and located in the Western District of Virginia.

2. I am a Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") and have been so employed since August 2016. I am currently assigned to the Bristol, Virginia Field Office. Prior to becoming an ATF Special Agent, I was a Special Agent with the US Department of State, Diplomatic Security Service for approximately six years. I have taken part in numerous federal, state, and local investigations concerning document and identity fraud, financial fraud, cyber crimes, and firearms and narcotics violations.

3. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

4. During my tenure in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds and the organization of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing confidential sources and cooperating witnesses; conducting physical surveillance; controlled buys; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register data; requesting, collecting and analyzing billing records; and conducting court-authorized electronic surveillance. Further, I have participated in the preparation, presentation and execution of numerous search and arrest warrants which have resulted in the recovery of weapons, narcotics, money and documentary evidence indicative of firearm and narcotic trafficking organizations. Additionally, I have assisted in investigations and arrests leading to convictions for violations of federal and state firearms and narcotics laws.

5. Through instruction and participation in investigations, I have become familiar with the manner and methods by which narcotics traffickers conduct their illegal business and the language and terms that are used to disguise conversations about their narcotics activities. From experience and training, I have learned, among other things, that in conversations narcotics traffickers believe susceptible to interception, they virtually never expressly refer to the illegal drugs by name; instead to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.

This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Kunta DANIELS has committed violations of Title 21 U.S.C. § 841(a), 21 U.S.C. § 846 and 18 U.S.C. § 924(c). There is also probable cause to search the information described in Attachment A for evidence, contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

8. Beginning at the end of October 2019, law enforcement began surveillance on 130 Colonial Court in Danville, VA. Over the course of the next several months, law enforcement observed Kunta DANIELS walking back and forth between Apartments 42 and 45 on a regular basis. Apartments 42 and 45 can be seen at the same time during surveillance.

9. Between November 2019 and March 2020, law enforcement performed regular surveillance on 130 Colonial Court in Danville, VA. A single officer at a time performed surveillance at least once a week, but often surveillance was performed multiple times a week. Surveillance sessions lasted between 20 minutes and a few hours. Law enforcement observed DANIELS walk back and forth between the apartments at least once a week, but often many times a week. It appeared that Kunta DANIELS used a key to enter Apartment 45 even though it is not leased in his name.

10. Utility records show Kunta DANIELS is the registered tenant in 130 Colonial Court Apartment 42. Additionally, VA Department of Motor Vehicles (DMV) records list 130 Colonial Court Apartment 42 as DANIELS' residence.

11. Utility and rental records show the listed tenant in Apartment 45 as Darrell Radcliff. Radcliff listed a New Jersey phone number, and has a New York driver's license. During surveillance law enforcement observed Radcliff at Apartment 45 on November 21, 2019. As more fully described in paragraph 9 above, law enforcement has conducted surveillance on that apartment at least one time per week, sometimes more, for January-March 2020. Law enforcement has not observed Radcliff at Apartment 45 in 2020.

12. The persons most often observed at Apartment 45 from October 2019-March 2020 were Kunta DANIELS and Raphael Daniels, believed to be Kunta's cousin. From time to time law enforcement saw other persons at Apartment 45. However, law enforcement did not observe activity consistent with any full-time resident of that apartment or any other persons at Apartment 45 with the frequency of Kunta DANIELS and Raphael Daniels. Based on information gathered during surveillance of the location, it appeared both Kunta DANIELS and Raphael Daniels had a key to Apartment 45.

13. On March 3, 2020, while conducting surveillance on 130 Colonial Court in Danville, VA, law enforcement observed an individual they recognized as Raphael Daniels arrive at 130 Colonial Court driving a silver Kia sedan. Raphael Daniels walked up to Apartment 45 carrying a backpack. At approximately 10:45 AM, he and Kunta DANIELS came out of Apartment 45 together. Kunta DANIELS had been in the apartment prior to Raphael's arrival. Raphael was not carrying the backpack upon leaving Apartment 45. Raphael left in the Kia and DANIELS left in a black Jeep Grand Cherokee, which is registered to him at 130 Colonial Court, Apartment 42, Danville, VA.

14. On March 4, 2020, law enforcement observed Kunta DANIELS arrive at 130 Colonial Court in his black Jeep. He walked up to Apartment 45 alone. Seconds later, he walked downstairs to Apartment 42 alone.

15. On March 9, 2020, investigators with the Danville Police Department (DPD) conducted surveillance on 130 Colonial Court in Danville, VA. They observed an individual they recognized as Kunta DANIELS, wearing a pair of blue and white high top basketball sneakers, move several times between Apartments 42 and 45 in the complex.

16. On March 10, 2020, at approximately 12:37 p.m., investigators conducting surveillance on 130 Colonial Court observed an individual they recognized as Raphael Daniels arrive at the complex in a silver Nissan Altima. Raphael Daniels walked to Apartment 42, where Kunta DANIELS resides, placed a white box on the chair outside the door, and walked back to the vehicle. Kunta DANIELS stepped outside Apartment 42. Raphael then met Kunta DANIELS, picked up the box from the chair, and walked into Apartment 42 with Kunta. Raphael then walked upstairs to Apartment 45 carrying the white box. Kunta walked upstairs and into Apartment 45 a few seconds later.

17. On March 10, 2020, at approximately 12:44 p.m., law enforcement observed a silver Chrysler 300 pull into the lot at 130 Colonial Court. A lone black male exited the vehicle and walked into Apartment 45. At 12:45 p.m., he walked down to his vehicle and drove away. This individual did not carry any large items with him into or out of the apartment.

18. On March 10, 2020, at approximately 12:45 p.m., law enforcement observed Kunta DANIELS and Raphael walking from Apartment 45 to Kunta DANIELS' Jeep. They both entered and drove away. Investigators maintained visual surveillance on both Apartments 42 and 45. No one entered either apartment until Kunta DANIELS and Raphael arrived back at the complex at approximately 2:14 p.m. At that time, both individuals walked from the Jeep directly to Apartment 45. Kunta DANIELS appeared to use a key to open the door of Apartment 45, and both individuals walked in. Less than a minute later, both individuals walked out of Apartment 45. Raphael walked out first, then Kunta DANIELS stepped out and closed the apartment door behind him. Raphael

Daniels walked to a silver Kia sedan and drove away. Kunta DANIELS walked into Apartment 42. No other individuals entered or exited Apartments 42 or 45 until Danville Police Department officers arrived at approximately 2:31 p.m. to execute search warrants.

19. On March 10, 2020, investigators with the Danville Police Department executed state search warrants at 130 Colonial Court, Apartment 42, and 130 Colonial Court, Apartment 45, in Danville, Virginia. While conducting the search of Apartment 45, officers located the following suspected illegal drugs: approximately 380 grams of suspected cocaine base (crack cocaine) in a bedroom; approximately 300 grams of suspected heroin in the kitchen closet; approximately 50 grams of suspected heroin wrapped in individual packaging intended for distribution in a shoe box in the same bedroom; and approximately 450 grams of powder cocaine in an open duffel bag in the same bedroom. A subsequent field test of the suspected cocaine base yielded a positive result for the presence of cocaine. A subsequent field test of the suspected heroin yielded a positive result for the presence of heroin. A field test of the suspected powder cocaine yielded a positive result for the presence of cocaine. Based on my training and experience, greater than 300 grams each of several controlled substances is far more than what would constitute a "personal use" quantity, and would constitute a distributable amount. Cocaine is listed by the Drug Enforcement Administration ("DEA") as a Schedule II controlled substance. Heroin is listed by the DEA as a Schedule I controlled substance. Possession of a controlled substance with intent to distribute is a violation of 21 U.S.C. § 841(a)(1), and possession of greater than 280 grams of cocaine base is a violation of 21 U.S.C. § 841(b)(1)(A).

19. In the kitchen of Apartment 45, investigators located several boxes of sandwich bags in a cabinet. Based on my training and experience, I know sandwich bags are often used to package smaller quantities of controlled substances for resale. In another cabinet, investigators located a vacuum sealing apparatus. I know this type of system is often used to package larger quantities of controlled substances for resale. Investigators did not locate any food items in the residence that were vacuum sealed. Also in Apartment 45, investigators located two mechanical presses and what appeared to be parts to a third.

Based on my training and experience, these presses appeared to be configured to manufacture "bricks" of drugs. Based on training and experience, I know drug traffickers often use this type of machine to compress wrapped powdered drugs into shapes that can be easily handled. They also often fabricate shaping components to emboss characters or logos into the bricks as a sort of logo or identifying "brand." One of the presses located in the residence contained a mold bearing the letters "TNT." Investigators also located suspected crack cocaine in a peanut butter jar in the kitchen cabinet and a quantity of suspected crack cocaine in a vegetable can in the same cabinet.

20. Investigators located approximately $10,000 in Apartment 45 and approximately $40,000 in Apartment 42.

21. Investigators further located the following firearms in Apartment 45: New Frontier Armory Model LW-15 AR-15 style semi-automatic pistol S/N NLV79485 in the same duffel bag in the bedroom described above containing the suspected narcotics; Remington Model 870 Express Magnum 12 gage shotgun with an unknown serial number on the floor of the bedroom; Glock Model 34 9mm pistol S/N KUL817 in the nightstand drawer; and a Sig Sauer Model SP2022 9mm pistol S/N 24B239425 on the living room couch covered by a towel. Based on my training and experience, I know the presence of distributable amounts of controlled substances concealed in numerous locations, large amounts of currency, and packaging materials would indicate that the apartment was being used primarily as a "stash house." While there was clothing, food and a bed present in Apartment 45, surveillance over the course of several days showed no indication of a full time resident. Also based on my training and experience, I know the only conceivable use for firearms at such a location would be to protect the "stash" of illegal drugs and large amounts of currency. It is a violation of 18 U.S.C. §924(c)(1)(A) to possess a firearm in furtherance of a drug trafficking crime. Possession with Intent to Distribute Controlled Substances (21 U.S.C. § 841(a)(1)) meets the definition of a "Drug Trafficking Crime" under 18 U.S.C. §924(c).

22. Additionally, investigators conducting the search of the residences located a single key that opens both Apartment 42 and Apartment 45 on DANIELS' keychain with his car keys. This key appears to be a master key.

23. In an interview with an employee of the apartment complex, investigators learned that for the last several months Kunta DANIELS has been paying the rent of both Apartments 42 and 45, in cash. He paid the rent for each apartment on different days of the month. In addition, interviews also showed DANIELS made a maintenance request for the clothes dryer in Apartment 45 sometime between October and December of 2019.

24. While conducting a search of Apartment 42, which according to the Virginia Department of Motor Vehicles and public utility records is DANIELS' primary residence, investigators located the following cellular telephones on the floor: Apple iPhone containing SIM card with identifying number 0064922901 (the "Device"); and Apple iPhone containing SIM card with identifying number 0038097004.

25. DANIELS was present at the time the cellular phones were located, there were no other occupants in the residence at the time of the warrant execution and in a subsequent post-Miranda interview, DANIELS acknowledged ownership of both phones. Based on my training and experience, I know drug dealers commonly use more than one cellular telephone.

## WIRELESS TELEPHONES

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. The current generation of "smartphones" also provides the capability to employ Third Party Applications (apps) to provide additional messaging, voice communication, and media capabilities. The aforementioned data can also be located on a device contained within these apps.

27. Based on my training and experience, I know individuals engaged in distribution of illegal drugs and firearms need to communicate with suppliers and customers in order to further and facilitate the buying and selling of these goods. As in any other modern day business, there are several methods used to conduct these communications. Drug traffickers often use telephone calls, text messages, social media platforms and other third party messaging applications to conduct drug related communications. All these methods can be used on a single or multiple mobile devices such as cellular telephones, tablets etc.

28. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on cellular telephones seized because data on the Device can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a Device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

residence. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

29. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or wireless telephone is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

30. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

31. Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32. Based on the forgoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,

s/ Peter Gonzalves
Special Agent Peter Gonzalves
Bureau of Alcohol, Tobacco, Firearms, and Explosives
United States Department of Justice

Sworn and attested to telephonically.

Subscribed and sworn to before me on _____ March 20 _____, 2020

*Robert S. Ballou*
HONORABLE JUDGE ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE IN THE
WESTERN DISTRICT OF VIRGINIA